# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
TAMMY BERGBAUER, )
)
    Plaintiff, )
)
    v. ) Civil Action No. 09-1032 (RCL)
)
RAY MABUS, )
SECRETARY OF THE NAVY, )
)
and )
)
REAR ADMIRAL CHARLES )
H. GODDARD )
)
    Defendants. )
_____ )

## MEMORANDUM OPINION

    Plaintiff Tammy Bergbauer brings this action against defendants Ray Mabus, Secretary of the Navy, in his official capacity ("Secretary") and Rear Admiral Charles H. Goddard ("Admiral Goddard") in his individual capacity. Ms. Bergbauer alleges that defendants sexually harassed her and created a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the D.C. Human Rights Act, D.C. Code § 2-1401.01, *et seq.* She also brings two common-law claims: a claim for intentional infliction of emotional distress against both defendants and a claim for battery against defendant Goddard. Before the Court are the Secretary's Motion [7] to Dismiss or, in the Alternative, for Summary Judgment and defendant Goddard's Motion [18] to Dismiss. Also before the Court are plaintiff's Motion [23] for Discovery Pursuant to Rule 56(f) and her Motion [34] to Amend the Complaint. Upon consideration of the motions, the oppositions, the replies, the entire record in this case, and the applicable law, the Court will grant in part and deny in part the Secretary's motion to dismiss

and grant Admiral Goddard's motion to dismiss. The Court will also deny plaintiff's motion for discovery as moot and grant plaintiff's motion for leave to file an amended complaint.

I. BACKGROUND

Plaintiff Tammy Bergbauer was hired by the Navy in July 2007 as Assistant/Co-Director of Corporate Operations, TEAM SHIPS division, and was promoted to Director of Corporate Operations a few months later. Am. Compl. [34-1] ¶¶9, 10. Alan Weyman was her direct supervisor, *id.* ¶18, but she was also supervised by Rear Admiral Charles Goddard, defendant. *Id.* ¶11. Admiral Goddard had an executive assistant at the time named Cameron Towner. *Id.* ¶12.

Ms. Bergbauer claims that she witnessed a pattern of "erratic and abusive" behavior toward women in her department, at the hands of Admiral Goddard and Mr. Towner. *Id.* ¶14. Toward the end of 2007, Mr. Towner made several sexually explicit comments to Ms. Bergbauer. *Id.* ¶15. In January 2008, Mr. Towner allegedly made a romantic overture toward her, in the form of a suggestive note, *id.* ¶16, and periodically made "sexually explicit, unwelcome[,] and lewd comments" about Ms. Bergbauer's looks. *Id.* ¶17. In February 2008, Mr. Towner apparently confessed to Ms. Bergbauer his longstanding desire to spend some time with her alone in a private office. *Id.* ¶18. Ms. Bergbauer says that she confronted Mr. Towner about his unwelcome behavior on several occasions. *Id.* ¶19.

A second round of misconduct occurred on the weekend of February 8, 2008, when Navy personnel (including Ms. Bergbauer) were celebrating the christening of a cargo ship in San Diego. *Id.* ¶20. A group of Navy employees, including Admiral Goddard, invited Ms. Bergbauer to a bar or restaurant for some evening celebrations. *Id.* ¶21. At that establishment, plaintiff alleges, Admiral Goddard "repeatedly touched [her] in an inappropriate manner on her back." *Id.* ¶21. Once the group was seated for dinner, Admiral Goddard upped the ante by removing his shoe and accosting Ms. Bergbauer with his foot under the table. *Id.* ¶22. The

discalced Admiral "used his socked foot to force his way between [Ms. Bergbauer's] legs," so embarrassing her that she excused herself from the table. *Id.* The misbehavior continued, however, later that evening, with Admiral Goddard groping plaintiff repeatedly. *Id.* ¶23. She tried to leave the restaurant, but Admiral Goddard and two other Navy employees followed her and prevented her from doing so. *Id.* Admiral Goddard grabbed hold of Ms. Bergbauer, "kissed [her] on the mouth[,] and forced his tongue into her mouth." *Id.* ¶24. She managed to break away from him and left the building. *Id.*

Ms. Bergbauer spoke about these acts to a "mentor and friend" named Sam Samimi, who passed the comments on to Ms. Bergbauer's immediate supervisor (Alan Weyman) around February 18, 2008.

Further misconduct at plaintiff's workplace occurred that spring. On April 22, 2008, Ms. Bergbauer reported to Mr. Weyman the details of an inappropriate comment, sexual in nature, that Cameron Towner had made to her that day. *Id.* ¶¶27, 28. Since Mr. Weyman, according to plaintiff, took no disciplinary action against Mr. Towner, she decided to report her sexual harassment claim to Admiral Goddard himself, who recommended that she go the Navy's Labor and Employee Relations Board. *Id.* ¶¶29, 30. Around this same time, Ms. Bergbauer "reported [Admiral Goddard's] outrageous behavior" at the restaurant in February 2008. *Id.* ¶31.

On July 1, 2008, Rear Admiral McManamon reassigned Ms. Bergbauer. *Id.* ¶32. Admiral McManamon instructed her to report to William Mark Deskins, while also—plaintiff alleges—threatening her at that time, warning her to "keep him happy after what she did" to Admiral Goddard and that failure to comply with this demand could affect her job performance rating. *Id.*

Another incident involving Admiral Goddard occurred two days later, on July 3, 2008. With Ms. Bergbauer not present, Admiral Goddard called a meeting with various coworkers of

3

Ms. Bergbauer and other Navy employees and announced that he was being fired because plaintiff had "gone after him." *Id.* ¶33. At this meeting, Admiral Goddard revealed Ms. Bergbauer's identity to other Navy employees as the sexual harassment complainant, which "further served to embarrass and harass" Ms. Bergbauer. *Id.* ¶34. While Admiral Goddard was relieved of his post because of the incident, Ms. Bergbauer claims that his removal was excessively delayed, causing her further injury. *Id.* ¶33.

In the weeks that followed this July 2008 meeting, Ms. Bergbauer claims that her work environment became increasingly hostile. *Id.* ¶35. Her new supervisor (William Deskins) allegedly excluded her from "critical e-mail conversations and other communications," failed to tell her about new duties he had created, forced her to complete "redundant assignments," and tried to paint her as an incompetent employee. *Id.* Mr. Deskins also purposefully cancelled her travel arrangements at the last minute "to disrupt [her] work schedule and isolate [her] from her coworkers." *Id.* 36. At a staff meeting, Mr. Deskins also apparently compared Ms. Bergbauer to a piece of coarse-grit sandpaper. *Id.* Ms. Bergbauer also alleged that her pay was reduced when Mr. Deskins, as reprisal, created an "unwarranted letter of reprimand" that went in her official file and gave plaintiff a poor performance review. *Id.* ¶37. Because of these, and other, acts, Ms. Bergbauer claims that she has suffered severe emotional distress, as well as "migraines, insomnia, nightmares, and post[-]traumatic stress disorder." *Id.* ¶38.

Ms. Bergbauer first contacted her agency's EEO office on July 11, 2008, seeking informal counseling. She filed a formal complaint of discrimination with the EEOC around September 15, 2008, and the EEOC gave her a right to sue letter the next day. *Id.* ¶44. On June 3, 2009, she filed suit in the U.S. District Court for the District of Columbia, before the Honorable Henry H. Kennedy, Jr. Ms. Bergbauer brought six counts, including two Title VII claims, two D.C. Human Rights Act claims, a claim for battery, and a claim for intentional

infliction of emotional distress. The Secretary of the Navy filed a Motion [7] to Dismiss or, in the Alternative, for Summary Judgment in August 2009. Admiral Goddard separately filed his own Motion [18] to Dismiss in October 2009. With these, and other, motions pending and ripe for decision, the case was reassigned to this Court in May 2011.

## II. LEGAL STANDARDS

### A. Rule 12(b) Dismissal

The Secretary and Admiral Goddard move for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Rule 12(b)(1) provides that a complaint may be dismissed for lack of subject matter jurisdiction. A court must accept the non-movant's factual allegations as true when reviewing a motion to dismiss under Rule 12(b)(1). *Jerome Stevens Pharm. Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005). A court may consider material beyond the allegations in the plaintiff's complaint when determining whether it has subject matter jurisdiction pursuant to Rule 12(b)(1). *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 624–25 (D.C. Cir. 1997).

Under Rule 12(b)(6), a court may dismiss a complaint, or any portion of it, for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A court considering such a motion to dismiss must assume that all factual allegations are true, even if they are doubtful. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide 'grounds' of [her] 'entitle[ment] to relief,'" however, "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right of relief above the speculative level." *Id.* (internal citations omitted).

B. **Summary Judgment**

The Federal Rules of Civil Procedure state that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

A nonmoving party, however, must establish more than "the existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). The nonmoving party must present specific facts that enable a reasonable jury to find in its favor. *Id.*

C. **Title VII**

1. **Substantive law**

Title VII forbids "discriminat[ion] against any individual with respect to [her] . . . terms [or] conditions . . . of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(1). Courts recognize two different varieties of Title VII sex-discrimination claims. First, courts recognize a Title VII claim for sex discrimination when some tangible employment action results from an employee's refusal to submit to a supervisor's sexual demands. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). In the D.C. Circuit, "[t]o qualify as a tangible employment action, an official act must have a significant effect on the plaintiff's employment status, work, or benefits. *Lutkewitte v. Gonzales*, 436 F.3d 248, 300 (D.C. Cir. 2006). Second, courts recognize under Title VII a claim for "discrimination based on sex" that is "created [by] a hostile

6

or abusive work environment." *Meritor*, 477 U.S. at 66. A plaintiff must show harassing behavior that is sufficiently severe or pervasive to alter the conditions of her employment. *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). In determining whether an actionable hostile work environment claim exists, courts must look to all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *Morgan*, 536 U.S. at 116. In sum, Title VII is violated either when a plaintiff's terms or conditions or employment are *explicitly* changed, or when they are changed *constructively*—e.g., when sexual harassment is so "severe or pervasive" that it effects an equivalent change to a plaintiff's employment environment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998); *see also Lutkewitte*, 436 F.3d at 298.

Alongside a hostile work environment claim based upon sexual harassment, the D.C. Circuit also recognizes a "retaliation" variant actionable under Title VII. *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006). To prevail on a retaliation theory, a plaintiff must show that her employer subjected her to discriminatory intimidation, ridicule, and insult of such severity or pervasiveness as to alter the conditions of her employment and create an abusive working environment. *Id.* A plaintiff must also show a causal connection between the harassment and prior protected activity. *Nichols v. Truscott*, 424 F. Supp. 2d 124, 141 (D.D.C. 2006).

**2. Exhaustion of administrative remedies**

A federal employee who believes that her agency discriminated or retaliated against her in violation of Title VII must seek administrative adjudication of her claim before filing suit in federal court. *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010); *see* 42 U.S.C. § 2000e-16(c). The EEOC has promulgated regulations that require the federal employee to first contact an EEO

7

counselor to try to informally resolve the matter, and the employee must do so "within 45 days of the date of the matter alleged to be discriminatory . . . ." 29 C.F.R. § 1614.105(a)(1). After this initial EEO contact, the employee must file an administrative complaint with her agency. *Id.* § 1614.106(a). The agency then conducts an investigation, and if requested by the employee, the matter is referred to an EEOC administrative judge for a hearing. *Id.* §§ 1614.106(e)(2), 1614.108–09. After the agency investigation, or decision of the EEOC administrative judge, the employing agency must take "final action." *Id.* § 1614.110. At that point an aggrieved employee may appeal to the EEOC, or file suit in federal court pursuant to 42 U.S.C. § 2000e-16(c). In cases where no "final action" is taken within 180 days after the filing of the charge with the EEOC, an aggrieved federal employee may file a lawsuit in federal court. *Id.*; *Murthy v. Vilsack*, 609 F.3d 460, 464 (D.C. Cir. 2010).

Title VII plaintiffs are required to exhaust their administrative remedies with respect to each allegedly discriminatory or retaliatory act or lose the ability to recover for it. *Morgan*, 536 U.S. at 114–15. However, a claim for a hostile work environment will not be time barred if all of the acts composing the claim are part of the same unlawful employment practice and at least one of these acts falls within the time period. *Id.* at 122.

### D. Battery and Intentional Infliction of Emotional Distress

Plaintiff's causes of action for intentional infliction of emotional distress and battery are based solely on state substantive law. To determine which state's law applies, the Court must use the choice-of-law rules of the District of Columbia. *See Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 842 (D.C. Cir. 2009). The District of Columbia blends a "governmental interests analysis" with a "most significant relationship" test. *Id.* (citing *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 566 A.2d 31, 40–41 & n.18 (D.C. 1989)). Under the governmental interests analysis, courts must evaluate the governmental policies underlying the applicable laws and

determine which jurisdiction's policy would be most advanced by having its law applied. *Id.* This typically leads to the application of the law of the plaintiff's domicile, as the state with the greatest interest in redressing injuries to its citizens. *Kirschenbaum v. Islamic Republic of Iran*, 572 F. Supp. 2d 200, 210 (D.D.C. 2008). To determine which jurisdiction has the most significant relationship to a case, courts must consider (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship between the parties is centered. *Id.*

Applying the District of Columbia's choice-of-law rules, the Court finds that the law of Maryland, where Ms. Bergbauer is domiciled, governs her claims for intentional infliction of emotional distress and battery. Under Maryland law, to make out a claim of intentional infliction of emotional distress, a plaintiff must prove that (1) the conduct is intentional or reckless as well as (2) extreme or outrageous; that (3) a causal connection exists between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977). As regards battery, it requires a showing of "the unpermitted application of trauma by one person upon any part of the body of another person." *Johnson v. Valu Food, Inc.*, 751 A.2d 19, 21 (Md. App. 2000).

### III. ANALYSIS

#### A. Counts I and III: Sexual Harassment

Ms. Bergbauer brings a claim for sexual harassment under Title VII against the Secretary (Count I), and also a claim for sexual harassment under the D.C. Human Rights Act against both the Secretary and Admiral Goddard (Count III), in his individual capacity. As an initial matter, Ms. Bergbauer's sexual harassment claim under the D.C. Human Rights Act (Count III) will be dismissed against both the Secretary and Admiral Goddard because Title VII "provides the

exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976).

Ms. Bergbauer's remaining Title VII sexual-harassment claim against the Secretary (Count I) will be dismissed for failure to state a claim. As stated above, to state a claim for sexual harassment under Title VII, a plaintiff must alleged that she suffered some tangible employment action as a result of her refusal to submit to a supervisor's sexual demands. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). In the D.C. Circuit, "[t]o qualify as a tangible employment action, an official act must have a significant effect on the plaintiff's employment status, work, or benefits. *Lutkewitte v. Gonzales*, 436 F.3d 248, 300 (D.C. Cir. 2006). Ms. Bergbauer hasn't alleged that sexual harassment, or her refusal to submit to a supervisor's sexual demands, led to a change in her employment status, work, pay, or benefits. While she alleges that the harassment, alongside the Navy's refusal to address it, "made clear that [her] employment was conditioned on accepting the sexual harassment," Am. Compl. [34-1] ¶49, this is insufficient and Count I will be dismissed.

**B. Counts II and IV: Hostile Work Environment**

Ms. Bergbauer also brings claims for a hostile work environment, based upon retaliation and sexual harassment, under both Title VII (Count II) and the D.C. Human Rights Act (Count IV).[1] Her Title VII hostile work environment claim is brought only against the Secretary, while her D.C. Human Rights Act claim is brought against both the Secretary and Admiral Goddard (in his individual capacity). For the reasons stated above (section III.A), her hostile work

---

[1] Ms. Bergbauer also appears to allege that she was discriminated against on the basis of "age and personal appearance," Am. Compl. [34-1] ¶53, as well as for her "disabilities." *Id.* ¶59. However, as defendants note, in the agency complaint she filed prior to filing this lawsuit, Ms. Bergbauer only alleged that she was discriminated against on the basis of "sex" and "reprisal." Defs.' Ex. 8 [10] 5. Plaintiff doesn't address this argument in her responsive submissions. Therefore, to the extent that her hostile work environment claim is based upon age, "personal appearance," or disability discrimination, it will be dismissed. *See Casole v. Johanns*, 577 F. supp. 2d 138, 141–42 (D.D.C. 2008).

environment claim (Count IV), brought under the D.C. Human Rights Act against both the Secretary and Admiral Goddard, will be dismissed because it's preempted by Title VII. *See Brown*, 425 U.S. at 835. What remains, then, is a Title VII claim against the Secretary for a hostile work environment, based upon sexual harassment and wrongful retaliation.

### 1. Sexual harassment

The Secretary argues that two incidents of sexual harassment weren't administratively exhausted by Ms. Bergbauer: (1) inappropriate comments by Cameron Towner from late 2007 to April 22, 2008 and (2) unwanted touching and kissing by Admiral Goddard in San Diego on February 9, 2008. Secretary's Mot. Dismiss [7] 9. While the Secretary is correct that EEOC regulations require Title VII complainants to make EEO-counselor contact within 45 days of any allegedly discriminatory or retaliatory act, the purpose served by EEO contact is also served where a complainant brings such acts to the attention of a supervisor. *Lloyd v. Chao*, 240 F. Supp. 2d 1, 3–4 (D.D.C. 2002). Ms. Bergbauer brought Mr. Towner's inappropriate comments to the attention of her supervisor (Alan Weyman) on April 22, 2008, Am. Compl. [34-1] ¶¶27, 28, and so her complaint as to that alleged misconduct was timely. Furthermore, under the Supreme Court's decision in *Morgan*, since that act was timely exhausted, the Secretary faces potential liability as to all other acts, even outside the filing period, so long as they constitute the same unlawful employment practice. 536 U.S. at 122. Therefore, while the incident in San Diego in February 2008 took place well outside the 45-day limit for EEO counselor contact, so long as that event is part of the same unlawful employment practice as subsequent acts of sexual harassment, the Secretary may be liable.

The Secretary also argues that Ms. Bergbauer's hostile work environment claim, based upon sexual harassment, should be dismissed because the alleged conduct wasn't sufficiently severe or pervasive. Def.'s Mot. Dismiss [7] 16. The Secretary spends some time arguing that a

single incident of harassment isn't enough, *id.* at 16–18, but Ms. Bergbauer's claim rests upon a number of instances of sexually harassing conduct over several months, including the salacious allegations related to the events in San Diego in February 2008—not just a single incident. Therefore the Secretary's citation to cases involving one incident of sexual misconduct are inapposite. *See id.* at 17–18. While discovery may reveal, as the Secretary contends, that this pattern of misconduct doesn't rise to the level of severity called for by the law, Ms. Bergbauer has alleged acts that are sufficiently severe, frequent, and humiliating to survive a motion to dismiss. *See Faragher v. Boca Raton*, 524 U.S. 775, 787–88 (1998).

### 2. Retaliation

In addition to the sexual harassment she suffered, mostly at the hands of Admiral Goddard and Mr. Towner, Ms. Bergbauer also claims that Navy personnel created a hostile work environment by retaliating against her for various forms of protected activity, including comments to her coworkers and supervisors as well as her formal complaint. Am. Compl. [34-1] ¶¶60, 61. She claims that this retaliatory conduct includes a letter of reprimand, "inappropriate change[s] in supervisors," changers to her job responsibilities, and a loss in pay. *Id.* ¶62.

Defendants challenge Ms. Bergbauer's hostile work environment claim, based on retaliation, on the grounds that she hasn't alleged acts of sufficient severity or pervasiveness to state a claim. Defs.' Mot. Dismiss [7] 25. The Secretary also argues, in his opposition to plaintiff's motion for leave to file an amended complaint, that the new acts of alleged retaliation that Ms. Bergbauer added to her Amended Complaint—a letter of reprimand and "unwarranted poor performance review" from her then-supervisor, William Deskins, Am. Compl. [34-1] ¶37—are time-barred. Def.'s Opp'n Pl.'s Mot. Leave [36] 6. However, contrary to the Secretary's arguments, Ms. Bergbauer has said enough about her treatment following protected activity to survive a motion to dismiss. She paints a picture of hostile supervisors isolating her from

coworkers and, ultimately, causing her to receive a pay reduction by means of warrantless reprimand letters and retaliatory performance reviews. Whether this pattern of conduct is as severe and pervasive as she makes it out to be will be determined through discovery.

As to the Secretary's claim that Ms. Bergbauer has failed to exhaust her administrative remedies with respect to the letter of reprimand and performance review, Secretary's Reply [32] 15–16, that argument fails, once again, under the Supreme Court's decision in *Morgan*, 536 U.S. at 122. So long as these later alleged acts of retaliation are part of the same unlawful employment practice as those acts which Ms. Bergbauer did timely exhaust, the Secretary can still be held liable for them. *Id.*

### C. Counts V and VI: Battery and Intentional Infliction of Emotional Distress

#### 1. Intentional infliction of emotional distress

Ms. Bergbauer brings a claim for intentional infliction of emotional distress against both the Secretary and Admiral Goddard. Am. Compl. [34-1] ¶¶94–98. The Secretary argues that Ms. Bergbauer's claim against the Secretary should be dismissed because there has been no waiver of sovereign immunity for such a claim. Secretary's Mot. Dismiss [7] 29. Since Ms. Bergbauer doesn't address this argument in any of her responsive papers, the Court deems it conceded and will dismiss plaintiff's claim for intentional infliction of emotional distress against the Secretary.

The claim will also be dismissed, against both the Secretary and Admiral Goddard, because it is preempted by Title VII. Where, as here, "the same set of facts supports a Title VII claim and a non-Title VII claim against a federal employer, the Title VII claim preempts the non-Title VII claim." *Mathis v. Henderson*, 243 F.3d 446, 450–51 (8th Cir. 2001) (quoting *Pfau v. Reed*, 125 F.3d 927, 933 (5th Cir. 1997)); see also *Brown v. Children's Nat'l Med. Ctr.*, 773 F. supp. 2d 125, 138–39 (D.D.C. 2011); *Wade v. Wash. Metro. Area Transit Auth.*, No. Civ. 01-

0334, 2005 WL 1513137, at *7 (D.D.C. Jun. 27, 2005) ("Any emotional injuries arising from the alleged harassment are subsumed within Title VII"). This preemptive effect is the same as to claims against individual supervisors as it is for claims against federal agencies themselves. *Pfau*, 125 F.3d at 934.

Therefore Ms. Bergbauer's claim for intentional infliction of emotional distress will be dismissed as to all defendants.

### 2. Battery

Ms. Bergbauer's battery claim is made only against Admiral Goddard in his individual capacity. She concedes, by failing to argue otherwise, that this claim is barred by the District of Columbia's 1-year statute of limitations on such claims.[2] Pl.'s Opp'n Goddard's Mot. Dismiss [24] 14 n.5; D.C. Code § 12-301(4). For this reason, her battery claim is dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the Secretary's Motion to Dismiss and grant Admiral Goddard's Motion to Dismiss. The claims remaining in this lawsuit are as follows: (1) a Title VII hostile work environment claim, based upon sexual harassment, against the Secretary; and (2) a Title VII hostile work environment claim, based upon retaliation, against the Secretary. All claims against Admiral Goddard will be dismissed. Plaintiff's Motion for Discovery will be denied as moot and her Motion to Amend the Complaint will be granted.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on September 14, 2011.

---

[2] While the Court has determined that Maryland law governs plaintiff's common-law claims, the District of Columbia's statute of limitations governs since the District of Columbia's choice-of-law rules consider the statute to be a procedural, not a substantive, matter. *Reeves v. Eli Lilly & Co.*, 368 F. Supp. 2d 11, 25 (D.D.C. 2005); *see also A.I. Trade Finance v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995).

14